

FILED
CLERK, U.S. DISTRICT COURT
MAR 29 2018
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MESBEL MOHAMOUD and<br>ERLINDA ABELLA,<br><br>　　　　Defendants. | CR No. 18-CR-00174-PSG<br><br>**INDICTMENT**<br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 2(b): Causing an Act to be Done] |

The Grand Jury charges:

COUNTS ONE THROUGH TWENTY-ONE

[18 U.S.C. §§ 1347, 2(b)]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

TNYC and the Defendants

1. The New You Center ("TNYC") was a private provider of alcohol and drug abuse treatment services, with its business office located in Los Angeles, California. TNYC was certified to provide alcohol and drug treatment services at its place of business under the Drug Medi-Cal program, described below.

2. Defendant MESBEL MOHAMOUD ("defendant MOHAMOUD") was the Executive Director and owner of TNYC.

3. Defendant ERLINDA ABELLA ("defendant ABELLA"), who was defendant MOHAMOUD's mother-in-law, was the Program Director of TNYC, which she had started with defendant MOHAMOUD in 2005.

The Drug Medi-Cal Program

4. The Medi-Cal program ("Medi-Cal") was a health care benefit program, affecting commerce, that provided reimbursement for medically necessary health care services to indigent persons in California. Funding for Medi-Cal was provided by the federal government and the State of California. Medi-Cal was administered by the California Department of Health Care Services ("DHCS").

5. The Drug Medi-Cal program ("Drug Medi-Cal") was a program within Medi-Cal that paid for medically necessary alcohol and drug treatment to California's Medi-Cal eligible population. Prior to approximately 2013, DHCS administered Drug Medi-Cal by providing funds to the California Department of Alcohol and Drug Programs ("ADP"), which in turn utilized county alcohol and drug programs ("County ADPs"), including the Los Angeles County Department of Public Health, Substance Abuse Prevention and Control, to provide eligible drug treatment services. In or about 2013, the ADP became part of DHCS, and since that time, DHCS has directly managed the County ADPs. The County ADPs entered into contracts with private service providers such as TNYC to provide treatment, recovery, and prevention services for eligible patients.

6. Drug Medi-Cal covered outpatient substance abuse treatment services only when such services were medically necessary, prescribed by a physician, and provided in accordance with utilization controls

and regulatory requirements set forth in Title 22 of the California Code of Regulations ("CCR"). Among other things, the CCR required that the provider: (a) develop and use criteria and procedures for the admission of beneficiaries to treatment; (b) complete a personal, medical, and substance abuse history for each beneficiary upon admission to treatment; and (c) complete an assessment of the physical condition of the beneficiary within thirty (30) calendar days of the admission to treatment.

7. Drug Medi-Cal providers were also required to have a treatment plan for each beneficiary that was: (a) completed and signed by the primary counselor assigned to the beneficiary within 30 days of the beneficiary's admission to treatment; (b) reviewed, approved, and signed by a physician within 15 days of the counselor's signature; and (c) updated on a regular basis.

8. In signing an initial treatment plan, the physician confirmed that the beneficiary had an alcohol or drug abuse or dependence diagnosis.

9. To qualify for Drug Medi-Cal reimbursement, outpatient group counseling had to be conducted in groups with, prior to approximately July 2014, no fewer than four and no more than ten clients (only one of whom had to be a Medi-Cal beneficiary), and beginning in or about July 2014, no fewer than two and no more than twelve clients. "Group counseling" meant face-to-face contacts in which one or more therapists or counselors treated two or more clients at the same time, focusing on the needs of the individuals served.

10. To constitute one unit of outpatient drug-free ("ODF") group counseling, the counseling session had to last at least 90 minutes.

11. "Individual counseling" meant face-to-face counseling with a therapist or counselor and included intake, crisis intervention, collateral services (face-to-face counseling sessions with a significant person in the beneficiary's life), and treatment and discharge planning.

12. To constitute one unit of ODF individual counseling, the counseling session had to last at least 50 minutes.

13. The "day care habilitative services" program ("DCH") and "day care rehabilitative services" program ("DCR") involved outpatient group and individual counseling and rehabilitation services provided at least three hours per day, three days per week, to clients with a substance abuse diagnosis, who, in general, were pregnant, had recently given birth, or were eligible for the Medi-Cal Early and Periodic Screening, Diagnosis and Treatment program.

14. To receive payment for substance abuse treatment services provided, Drug Medi-Cal providers submitted to the appropriate County ADP claims that reported, among other things, the dates, units, and types of services (e.g., ODF group, ODF individual, or DCH/DCR counseling) provided to each Medi-Cal beneficiary. TNYC submitted to the County ADP its claims for payments from Drug Medi-Cal at the beginning of the month following the month in which the claimed services were purportedly provided.

15. To support its claims for payment, each Drug Medi-Cal provider was required to establish and maintain for at least three years an individual client record for each beneficiary containing the

following documentation: evidence that the beneficiary met the admission criteria for Drug Medi-Cal services; treatment plans; progress notes; evidence that the beneficiary received counseling; justification for continuing services; the discharge summary; evidence of compliance with requirements for the specific treatment service; and records substantiating the services for which claims for payment were submitted.

Defendants' Responsibilities at TNYC

16. Defendant MOHAMOUD handled the billing for TNYC and was responsible for ensuring that TNYC submitted to the County ADP true and accurate claims for reimbursement from Drug Medi-Cal.

17. Defendant ABELLA was responsible for ensuring that TNYC counselors conducted the TNYC substance abuse treatment program in accordance with Medi-Cal and Drug Medi-Cal requirements and for providing true and accurate billing data to defendant MOHAMOUD. Therefore, defendant ABELLA was responsible for ensuring that TNYC counselors: (a) enrolled in the TNYC substance abuse counseling program only those clients that had an alcohol or substance abuse disorder or addiction; (b) conducted the ODF group, ODF individual, and DCH counseling sessions for the appropriate amounts of time, with the appropriate number of clients, with the appropriate subject matter, and in the appropriate confidential setting; and (c) prepared true and accurate paperwork to support the provision of counseling services.

B. THE SCHEME TO DEFRAUD

18. Beginning in or about January 2009, and continuing through in or about December 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants MOHAMOUD and

ABELLA, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed and attempted to execute a scheme: (a) to defraud a health care benefit program, namely Medi-Cal, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money owned by and under the custody and control of Medi-Cal by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C. THE MANNER AND MEANS OF THE SCHEME

19. The fraudulent scheme operated, in substance, in the manner and by the means set forth in paragraph 20 below.

20. Knowing that these practices contravened Drug Medi-Cal requirements and would result in TNYC submitting to the County ADP false claims for Drug Medi-Cal reimbursement and the creation and maintenance of false paperwork to support these false claims:

    a. TNYC counselors, acting at defendant ABELLA's direction:

        i. enrolled clients in the TNYC substance abuse treatment program even if the clients had used drugs or alcohol only occasionally or even just once;

        ii. purportedly conducted DCH group counseling sessions at unauthorized sites rather than at TNYC;

        iii. collected client signatures on sign-in sheets for group and individual counseling sessions that the clients did not in fact attend or that were not in fact conducted;

          iv. forged clients' signatures on sign-in sheets and other documents related to TNYC's substance abuse treatment program;

          v. prepared progress notes that falsely showed that the clients in the counselors' caseloads had attended group counseling sessions up to four days each week, even though the clients had not attended counseling sessions that many days, the sessions they did attend were not as long as claimed (90 minutes for ODF or three hours for DCH), the sessions included more than ten or twelve clients, and the sessions otherwise did not meet the requirements for Drug Medi-Cal reimbursement; and

          vi. maintained false progress notes in the clients' files as documentation purportedly supporting TNYC's fraudulent billing.

    b. Defendant ABELLA instructed counselors to engage in the practices described in subparagraph (a) above and at times engaged in these practices herself.

    c. Defendants ABELLA and MOHAMOUD created and caused to be created falsified billing data for clients who were hospitalized at the time they purportedly received services from TNYC;

    d. Defendant ABELLA reported to the state court and the Department of Children and Family Services that certain clients had completed the requisite number of hours of substance abuse counseling when, in fact, they had not.

    e. Defendant ABELLA caused the preparation of fraudulent treatment plans for clients that falsely indicated that the clients needed substance abuse treatment, even though the clients' records indicated that the clients had only once or occasionally used alcohol or drugs or had not used alcohol or drugs recently.

f.  Defendants MOHAMOUD and ABELLA created and caused to be created falsified billing data that they used to generate and submit to the County ADP false and fraudulent claims from TNYC for substance abuse treatment services that, as defendants MOHAMOUD and ABELLA well knew, were based on falsified enrollment criteria, were supported by false documentation, and did not qualify for Drug Medi-Cal reimbursement.

21.  As a direct and intended result of the fraudulent scheme, defendants MOHAMOUD and ABELLA caused TNYC to submit to the County ADP false and fraudulent Drug Medi-Cal claims totaling approximately $2,083,778 for counseling services, and Drug Medi-Cal paid approximately $1,851,439 on those claims.

D.  **EXECUTION OF THE SCHEME TO DEFRAUD**

22.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants MOHAMOUD and ABELLA, together with others known and unknown to the Grand Jury, executed and attempted to execute the fraudulent scheme described above, by knowingly and willfully submitting and causing to be submitted to the County ADP the following claims for Drug Medi-Cal payments, which claims were false and fraudulent in that: (a) the clients identified in the claims as having received the counseling for which the claims sought payment (i) did not have a medical need for the counseling and (ii) did not in fact receive the counseling, either because the purported counseling session was not in fact conducted or the client represented as being present was not in fact there; and (b) in the case of clients from Dimondale Adolescent Care Facility group homes,

8

TNYC was not authorized to provide counseling at the location specified:

| COUNT | DATE SUBMITTED | CLIENT/ BENEFICIARY | CLAIM NUMBER, TYPE AND DATE OF SERVICE, AND AMOUNT BILLED |
|---|---|---|---|
| ONE | In or about April 2013 | A.R. | A725144680: Group counseling session purportedly conducted on March 23, 2013<br><br>Billed: $61.33 |
| TWO | In or about May 2013 | S.A. | A725144989: DCH counseling session purportedly conducted on April 23, 2013<br><br>Billed: $65.38 |
| THREE | In or about August 2013 | K.D. | A725146858: DCH counseling session purportedly conducted on July 2, 2013<br><br>Billed: $62.15 |
| FOUR | In or about September 2013 | M.J. | A725147725: DCH counseling session purportedly conducted on August 17, 2013<br><br>Billed: $62.15 |
| FIVE | In or about November 2013 | C.B. | A725100358: Group counseling session purportedly conducted on October 7, 2013<br><br>Billed: $62.24 |
| SIX | In or about December 2013 | A.C. | A725101510: DCH counseling session purportedly conducted on November 13, 2013<br><br>Billed: $62.15 |
| SEVEN | In or about December 2013 | H.W. | A725101460: DCH counseling session purportedly conducted on November 19, 2013<br><br>Billed: $62.15 |
| EIGHT | In or about December 2013 | G.M. | A725101289: DCH counseling session purportedly conducted on November 20, 2013<br><br>Billed: $62.15 |

| COUNT | DATE SUBMITTED | CLIENT/ BENEFICIARY | CLAIM NUMBER, TYPE AND DATE OF SERVICE, AND AMOUNT BILLED |
|---|---|---|---|
| NINE | In or about December 2013 | Am.J. | A725101529: DCH counseling session purportedly conducted on November 20, 2013<br><br>Billed: $62.15 |
| TEN | In or about February 2014 | N.H. | A725103294: DCH counseling session purportedly conducted on January 15, 2014<br><br>Billed: $62.15 |
| ELEVEN | In or about April 2014 | I.E. | A725149513: DCH counseling session purportedly conducted on March 11, 2014<br><br>Billed: $62.15 |
| TWELVE | In or about April 2014 | An.D. | A725149471: DCH counseling session purportedly conducted on March 12, 2014<br><br>Billed: $62.15 |
| THIRTEEN | In or about April 2014 | As.D. | A725149481: DCH counseling session purportedly conducted on March 19, 2014<br><br>Billed: $62.15 |
| FOURTEEN | In or about April 2014 | I.W. | A725149806: DCH counseling session purportedly conducted on March 19, 2014<br><br>Billed: $62.15 |
| FIFTEEN | In or about June 2014 | J.Ma. | A725151527: DCH counseling session purportedly conducted on May 9, 2014<br><br>Billed: $62.15 |
| SIXTEEN | In or about June 2014 | J.Me. | A725151558: DCH counseling session purportedly conducted on May 10, 2014<br><br>Billed: $62.15 |

| COUNT | DATE SUBMITTED | CLIENT/ BENEFICIARY | CLAIM NUMBER, TYPE AND DATE OF SERVICE, AND AMOUNT BILLED |
|---|---|---|---|
| SEVENTEEN | In or about June 2014 | N.A. | A725151782: DCH counseling session purportedly conducted on May 20, 2014<br><br>Billed: $62.15 |
| EIGHTEEN | In or about June 2014 | A.B. | A725151356: DCH counseling session purportedly conducted on May 22, 2014<br><br>Billed: $62.15 |
| NINETEEN | In or about June 2014 | C.G. | A725151432: DCH counseling session purportedly conducted on May 28, 2014<br><br>Billed: $62.15 |
| TWENTY | In or about June 2014 | B.J. | A725151485: DCH counseling session purportedly conducted on May 29, 2014<br><br>Billed: $62.15 |
| TWENTY-ONE | In or about July 2014 | An.J. | A725152586: DCH counseling session purportedly conducted on June 14, 2014<br><br>Billed: $62.15 |

## COUNT TWENTY-TWO

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

23. The Grand Jury hereby re-alleges and incorporates by reference paragraphs 1 through 17 and 19 through 22 of this Indictment as though set forth in their entirety herein.

24. From on or about August 17, 2013, to in or about September 2013, in Los Angeles County, within the Central District of California, defendants MOHAMOUD and ABELLA, together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendants MOHAMOUD and ABELLA knew belonged to another person, that is, the name and Medi-Cal number of M.J., during and in relation to the offense of Health Care Fraud, a felony violation of Title 18, United States Code, Section 1347, as charged in Count Four of this Indictment.

1 COUNT TWENTY-THREE

2 [18 U.S.C. §§ 1028A(a)(1), 2(b)]

3   25.  The Grand Jury hereby re-alleges and incorporates by reference paragraphs 1 through 17 and 19 through 22 of this Indictment as though set forth in their entirety herein.

6   26.  From on or about October 7, 2013, to in or about November 2013, in Los Angeles County, within the Central District of California, defendants MOHAMOUD and ABELLA, together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendants MOHAMOUD and ABELLA knew belonged to another person, that is, the name and Medi-Cal number of C.B., during

///

///

///

and in relation to the offense of Health Care Fraud, a felony violation of Title 18, United States Code, Section 1347, as charged in Count Five of this Indictment.

A TRUE BILL

/S/

Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSEIN
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section

CATHY J. OSTILLER
Assistant United States Attorney
Major Frauds Section